## BOUDREAUX et al. v. TEXAS & N. O. R. CO.

No. 2666.

Court of Civil Appeals of Texas. Beaumont. Jan. 9, 1935.

Rehearing Denied Jan. 16, 1935.

Morris & Bennett, of Beaumont, and Marcus A. Broussard, of Abbeville, for appellants.

Duff & Cecil, of Beaumont, for appellee.

WALKER, Chief Justice.

On the 28th day of December, 1932, James Stanford Boudreaux was killed by one of appellee's trains at the Pearl street crossing in the city of Beaumont. Both his father and mother were dead at the time of his death. This suit was instituted by his stepmother, Mrs. Annie H. Boudreaux, and his brothers and sisters to recover $30,000 for his death, and $495 as damages for the mental pain and anguish suffered by him caused by the injury inflicted by appellee, Texas & New Orleans Railroad Company. The case is before us upon appeal duly prosecuted by the stepmother and brothers and sisters, from the order of the lower court sustaining appellee's general demurrer to their petition on the ground that no cause of action survived to them for the death of James Stanford Boudreaux, and that the cause of action for pains suffered by the deceased was below the jurisdiction of the district court.

It is provided by article 4675, R. S. 1925, as amended by Acts 1927, c. 239, § 2 (Vernon's Ann. Civ. St. art. 4675), that: "Actions

for damage arising from death shall be for the sole and exclusive benefit of and may be brought by the surviving husband, wife, children, and parents of the person whose death has been caused or by either of them for the benefit of all."

In connection with this statute, no definition is given of the beneficiaries designated as "parents." In order to bring themselves within the provisions of article 4675, appellants make the following allegations in their petition which, as against the general demurrer, we assume to be true: "Plaintiffs allege that the plaintiff, Mrs. Annie H. Boudreaux, a feme sole, about forty (40) years of age, is the surviving step-mother of James Stanford Boudreaux, deceased, and that the plaintiff, Mrs. Annie H. Boudreaux married James Stanford Boudreaux's father at the time James Stanford Boudreaux was a small child, about seven years of age, and at the time when the other plaintiffs herein mentioned were all small children, and that the said Mrs. Annie H. Boudreaux, upon her marriage into said family, claimed and adopted the above mentioned plaintiffs, and the said James Stanford Boudreaux, as her own children, without however, complying with any statutory provisions with reference to said adoption, but simply assumed the position as natural mother to said children, and said Mrs. Annie H. Boudreaux informed said children at said time and at numerous times since said time, that she had adopted them as her own children, including the said James Stanford Boudreaux, deceased. That the said James Stanford Boudreaux's father has been dead for about three years prior to the time of the death of the same James Stanford Boudreaux, and that the plaintiff, Mrs. Annie H. Boudreaux, stood in loço parentis in the said James Stanford Boudreaux. That the Said James Stanford Boudreaux had for many years been working, supporting the plaintiff, Mrs. Annie H. Boudreaux, and the minors above named; that he assumed the position as head of the family, and that the plaintiff, Mrs. Annie H. Boudreaux, had assumed the position of natural mother to the said James Stanford Boudreaux, had taken care of him in every way as a natural mother would, bore him the same love and affection; and administered to his wants and desires as a natural mother would, and had in fact adopted him as her son, without, however, complying with statutory provisions. That the said James Stanford Boudreaux at the time of his death was a single man, having never been married, twenty three (23) years of age, having regular employment, driving a delivery vehicle for the Phelan Grocery Company, a business house in the City of Beaumont, Texas, and was earning and was capable of earning a salary of Twenty-Two and 50/100 Dollars ($22.50) per week, and would have received promotions, and would have earned more and more as he grew older and more experienced, in said business and that he contributed to the support and maintenance of the plaintiff, Mrs. Annie H. Boudreaux, and the above mentioned minors, and that the said plaintiffs had a reasonable expectation that he would continue to so contribute to the support of said plaintiffs so long as they should be in need of such assistance. That the other plaintiffs named herein are the surviving brothers and sisters of the said James Stanford Boudreaux, deceased; that is to say, that the said Mrs. Goldie Nunez, Lloyd Boudreaux, and Mrs. Velam Nauck, Archie Boudreaux, and Jesse Boudreaux, are brothers and sisters of the full blood of the said James Stanford Boudreaux, deceased, and that the minor children, May, Norma, and Gene Boudreaux, are sisters and brothers of the half blood of the said James Stanford Boudreaux, being the children of the plaintiff, Mrs. Annie H. Boudreaux."

■ Where the beneficiaries are specially named in a survival statute, "the action cannot be maintained by, or for the benefit, of anyone not within the statutory designation." 17 C. J. 1211. See, also, same volume, pp. 1184, 1195, 1196. See, also, St. Louis, A. & T. Railway Co. v. Johnston, 78 Tex. 536, 15 S. W. 104; Missouri Pac. Railway Co. v. Henry, 75 Tex. 220, 12 S. W. 828; Texas & N. O. Railway Co. v. Mills (Tex. Civ. App.) 143 S. W. 690. Since the brothers and sisters are not named as beneficiaries in the survival statutes, they cannot recover, and the general demurrer was correctly sustained as to them. (We understood appellants to concede this point on oral argument.)

■ While the stepmother, as, such, is not designated a beneficiary in the statutes, appellants advance the following proposition as presenting their theory of the survival of the cause of action in her favor: "Under the Texas Statutes, the step-mother who is dependent upon her step-son for support, who bears to him and him to her the same affection as natural parent and son, and who has merely failed to execute and file formal adoption papers under the Statute, has a cause of action against the railroad company for its negligence causing the death of her step-son."

On authority of Chancellor v. Chancellor (Tex. Civ. App.) 23 S.W.(2d) 761, appellee concedes the point that, if the stepmother had legally adopted the deceased, that is, adopted him in compliance with our statutes of adoption, she could qualify as a parent. But, on the affirmative allegations of her petition, she had not legally adopted the deceased and had made no effort to adopt him legally. The following proposition from 8 R. C. L. 764, is in point: "Nothing short of adoption in accordance with legal requirements will, however, enable a foster parent to maintain an action for the death of an adopted child. Hence, where a child has been cared for since early youth, and treated as a natural child, but no adoption proceedings have been had, an action may not be maintained."

However, appellants cite the recent case by the Supreme Court of Cubley v. Barbee, 73 S.W.(2d) 72, as authority for the proposition that the facts pleaded constitute such an adoption as our jurisprudence will recognize and enforce, thereby making the stepmother the legal parent of the deceased. The Cubley Case does not sustain that contention. In that case all the statutory papers had been duly prepared, executed, and delivered by the natural parent and accepted by the adopting parent, and the papers delivered to a lawyer for the purpose of having them filed and recorded as required by the statute. Through negligence on the part of the lawyer, that was not done. Thus, every element of the statutes was complied with, except the filing and recording of the papers. All the Supreme Court decided in that case was that, on its peculiar facts, the natural children of the adopting parents were estopped to deny the representations of the deceased parents that the statutes had been complied with. In writing the opinion, Judge Cureton made no effort to write the adopting statutes out of our laws, nor did he say or intimate that there was any method of adoption outside of the statutory method, which the Supreme Court would recognize and effectuate. As we understand Judge Cureton's opinion, he concedes that the statutes constitute the exclusive method of adoption but, because of the peculiar facts of a case, the issue of estoppel may arise against the claim that some particular statutory provision had not been complied with. As the stepmother in this case made no effort to adopt the deceased in the statutory manner, and made no representation to that effect, the issue of estoppel was not available to her, and, therefore, Cubley v. Barbee has no application.

The allegation that the stepmother in her relation to the deceased stood in loco parentis did not bring her within the provisions of article 4675. Perez v. Central Power & Light Co. (Tex. Civ. App.) 27 S.W.(2d) 641, decides this proposition against appellants. In that case, a sister brought suit to recover damages for the death of her minor brother. She alleged that she stood in loco parentis to the child and, although she had not legally adopted him as her son, she had taken care of him since he was two years old, caring for him for twelve years, under a contract with the child's parent to educate, love, and perform all the duties of a mother for a son, and considered him as her son. She alleged that she had fulfilled her part of this contract, and that the minor had fulfilled his part, and, therefore, she was entitled to recover under the statute for the wrongful act. Denying that contention, the court said:

"It is elemental that at common law no right of action existed for damages for fatal injuries wrongfully inflicted upon any person, and that such right of action may arise only through statutory enactment. The right of action was created and exists in Texas by virtue of a statute (article 4671, R. S. 1925), but is restricted in its operation by the provision in article 4675, as amended by the Act of March 30, 1927, * * * that 'actions for damage arising from death shall be for the sole and exclusive benefit of and may be brought by the surviving husband, wife, children, and parents of the person whose death has been caused or by either of them for the benefit of all.'

"Obviously appellant's allegations do not bring her within the class of persons prescribed in the statute, but, on the other hand, clearly exclude her therefrom. Taylor v. Deseve, 81 Tex. 249, 16 S. W. 1008; Yoakum v. Selph, 83 Tex. 607, 19 S. W. 145; Galveston, H. & S. A. R. Co. v. Le Gierse, 51 Tex. 189; Parker v. Dupree, 28 Tex. Civ. App. 341, 67 S. W. 185; Bonner v. Exp. Co. (Tex. Civ. App.) 286 S. W. 291."

Nor does the ordinary meaning of the word "parents" include stepmothers; nor was the word used in that sense by the Legislature in adopting article 4675. The word "parent" is thus defined by Funk & Wagnall's New Standard Dictionary of the English Language:

"Parent—One who has generated a child. A father or mother.

"Parent—Any organism considered in relation to other organisms produced by it through a generative process."

By 17 C. J. 1217, it is thus defined: "The word 'parent' means either the father or the mother. One in loco parentis, but who is neither the natural nor the adoptive parent, cannot recover for the death of a child."

By these authorities, a "stepmother" is not a "parent" in the ordinary meaning of the word.

In what sense was the word "parent" used by the Legislature in adopting article 4675? On that issue, in Turner v. Cross, 83 Tex. 218, 18 S. W. 578, 579, 15 L. R. A. 262, the Supreme Court said:

"It is the duty of a court to give to language used in a statute the meaning with which it was used by the legislature if this can be ascertained; and to do this, if the words used be not such as have a peculiar meaning when applied to a given art or trade with reference to which they are used in the statute, the only safe rule is to apply to them their ordinary meaning, for the legislature must be presumed to have used them in that sense in which they are ordinarily understood; and if, so applying them, the legislation in which they are found seems to be harsh, or not to embrace and give remedies for acts for which remedies ought to be given, the courts, for such reasons, are not authorized to place on them a forced construction for the purpose of mitigating a seeming hardship, imposed by a statute, or conferring a right which the legislature had not thought proper to give. It is the duty of a court to administer the law as it is written, and not to make the law; and however harsh a statute may seem to be, or whatever may seem to be its omission, courts cannot, on such considerations, by construction sustain its operation, or make it apply to cases to which it does not apply, without assuming functions that pertain solely to the legislative department of the government. * * *

"It must be borne in mind that actions for injuries resulting in death can be maintained only against such corporations and persons as the statute gives such actions against, and only in favor of such persons as the statutes name, and the courts have no more power to extend its operation by construction not authorized by the words of the statute."

In designating the beneficiaries by article 4675, on authority of the case just cited, we must say that the Legislature used the word "parent" in its ordinary meaning, unless it affirmatively appears that a peculiar meaning was intended which would include stepmothers. In adopting article 4675 the Legislature was acquainted with prior legislation on the subject of survival, particularly with Lord Campbell's Act, which "may be said to have led the way in this kind of legislation." 17 R. C. L. 722. Lord Campbell's Act clearly did not use the word "parent" in its ordinary meaning, because it proceeded to define the word giving it a peculiar meaning, as follows, quoting Webster's New International Dictionary: "As in Lord Campbell's Act, where it is defined to include father, mother, grandfather, grandmother, stepfather, or stepmother."

Now had that act merely used the word "parent," and had the courts construed it to include a stepmother, then it would be correct to say that the Legislature, in adopting article 4675, intended to use it in that sense, unless the context of our survival act compelled a different construction. But since the word was particularly defined by Lord Campbell's Act, the conclusion rightfully follows that, though adopting the principles of that act, the Legislature did not adopt the meaning given by it to the word "parent," but that the word was used in its ordinary meaning. In Atkinson v. Yarborough, 13 Ga. App. 781, 80 S. E. 29, it was decided that a grandmother does not come within the statutory designation of parent. The same holding was made in Smith's Ex'r v. Smith, 2 Bush (65 Ky.) 520. In Thornburg v. American Strawboard Co., 141 Ind. 443, 40 N. E. 1062, 50 Am. St. Rep. 334, it was held that the word "father," as used in a statute providing that a father may sue, should be construed to mean one's natural father, and not as including a stepfather. In Marshall v. Macon-Sash, Door & Lumber Co., 103 Ga. 725, 30 S. E. 571, 572, 41 L. R. A. 211, 68 Am. St. Rep. 140, the court said: "Our attention has been called to no authority in which it has ever been decided that the word 'parent,' either in the legal or ordinary acception of that term, includes a stepfather or stepmother."

Heinemier v. Arlitt, 29 Tex. Civ. App. 140, 67 S. W. 1038, 1040, is authority for the proposition that where the word "parent" is used by the Legislature, the word should be given its ordinary meaning, unless, on principles recognized by Turner v. Cross, supra, the word has a peculiar meaning. In Heinemier v. Arlitt there was a controversy over the guardianship of minor children between the stepmother, Mrs. Arlitt, and an uncle Heinemier. The stepmother was claiming the rights of a "parent." Denying her contention, the court said: "We are satisfied that the term 'parent,' as there used, does not include a stepfather or stepmother."

What we have said denies all theories presented by appellants' petition upon which the stepmother sought to bring herself within the provisions of article 4675; and, therefore, the general demurrer was correctly sustained against her claim of damages for the death of her stepson.

Appellants do not contend that, standing alone, the district court had jurisdiction of their cause of action for $495.

The judgment of the lower court is in all things affirmed.