**Jack and Ada TAYLOR, Individually and As Next Friends of David Smith Taylor, Appellants,**

**v.**

**Dr. J.W. PARR, Appellee.**

**No. A14–83–679CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 24, 1984.

Michael P. Mallia, Houston, for appellants.

Robert J. Swift, Fulbright & Jaworski, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Appellants, Jack and Ada Taylor, appeal the summary judgment rendered against them in a medical malpractice lawsuit against Dr. J.W. Parr. The sole issue on appeal is whether the Taylors, as foster parents and managing conservators of David Smith Taylor, a minor, have standing to bring their action for the death of David. We affirm the summary judgment.

In order to clarify the issue on appeal, we first summarize the relevant facts. David Smith Taylor was born May 13, 1973, with hydrocephalus, a condition in which spinal fluid does not properly drain from the brain, thereby collecting and causing increased cranial pressure. To combat this condition, a shunt was surgically inserted, allowing the excess fluid to drain into his abdomen.

In addition to his physical handicaps, David was also an abused child. He was removed from his natural parents' home in January, 1976, and placed in Jack and Ada Taylor's home as a foster child. Both natural parents' rights were terminated later that year and the Grimes County Social Service Unit was appointed managing conservator. In the meantime, the Taylors, as foster parents, became very fond of David. Although they were aware of his medical problems and the fact that he had been labelled "mentally retarded," they expressed a desire to adopt him. Because David was classified as not "adoptable," Social Services made an exception to its general policy prohibiting foster parents from adopting foster children; however, in order to allow David to continue receiving federal medicaid benefits, the Taylors sought to be named managing conservators, rather than pursuing a formal adoption. The trial court approved this method of placement and ordered that the Taylors be named managing conservators. The court gave them, as managing conservators, many of the rights, powers, duties and privileges of "parents" as enumerated in section 12.04 of the Family Code, but specifically excluded those rights as "parents" to inherit from David and to manage his estate. *See* Tex.Fam.Code Ann. §§ 12.-04, 14.02 (Vernon Supp.1983).

The circumstances which form the basis of this lawsuit began on the morning of February 8, 1978, when Ada Taylor took David to his pediatrician, appellee, Dr. J.W. Parr, because David was complaining of headaches and began vomiting. Dr. Parr checked for evidence of intercranial pressure, particularly in the shunt, but found no indications of increased pressure. He treated David for the vomiting and instructed Ada Taylor to notify him of any changes in the boy's condition. That afternoon Mrs. Taylor brought David to the emergency room as he was apparently experiencing seizures. It was determined that the shunt was not functioning normally, and David was transferred by ambulance to the Texas Children's Hospital,

where he died approximately one month later.

After David's death, Jack and Ada Taylor filed a petition seeking recovery from Dr. Parr on two theories, namely, for the wrongful death of David and for the tortious interference with their familial relationship with him. Dr. Parr responded with a motion for summary judgment alleging that the Taylors did not have standing to bring the suit because managing conservators are not named as proper plaintiff in the Texas Wrongful Death Statute. Tex. Rev.Civ.Stat.Ann. art. 4675 (Vernon 1952 & Supp.1983). The trial court granted the summary judgment, from which judgment the Taylors now appeal.

■ It is well recognized that there is no common law right to recover for the wrongful death of another. Rather, this right exists in Texas only through our Wrongful Death Statute. *Duhart v. State*, 610 S.W.2d 740, 742 n. 2 (Tex.1980); *Amos v. Central Freight Lines, Inc.*, 575 S.W.2d 636, 638 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). *See* Tex.Rev.Civ.Stat.Ann. art. 4671 *et seq.* (Vernon 1952 & Supp. 1983). These provisions limit recovery to the husband, wife, children and parents of the deceased. Tex.Rev.Civ.Stat.Ann. art. 4675 (Vernon 1952 & Supp.1983). Appellants thus argue that since they, as managing conservators, were accorded virtually all of the benefits and duties of parents, they should be treated as such for purposes of the Wrongful Death Statute. While we are sympathetic to this argument, our review of current Texas law convinces us that we cannot by judicial fiat engraft such an addendum to the statute.

■ The Family Code defines "parent" as the mother, the legitimate father, or an adoptive parent. Tex.Fam.Code Ann. § 11.01(3) (Vernon 1975). Since it is undisputed that the Taylors did not adopt David, it is clear that they do not meet the Code definition of "parents." It is similarly clear that since they did not comply with formal adoption proceedings, they did not fit the wrongful death designation of "parents." *See Go International, Inc. v. Lew-*

*is*, 601 S.W.2d 495 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.). This parental designation has long been held to be limited to those specially named and the class of beneficiaries cannot be expanded beyond the aforementioned definitions. *See Boudreaux v. Texas N.O.R. Co.*, 78 S.W.2d 641 (Tex.Civ.App.—Beaumont 1935, writ ref'd). Consequently, although the Taylors had taken on the responsibility of caring for this child as their own, the law dictates that their failure to comply with the adoptive process precludes them from recovery under the Wrongful Death Statute. Furthermore, any suggestion that the Taylors stood *in loco parentis* is likewise fruitless. Such a relationship does not bring the parent within the provisions of article 4675. *Goss v. Franz*, 287 S.W.2d 289 (Tex.Civ. App.—Amarillo 1956, writ ref'd); *Boudreaux* at 643; *Perez v. Central Power & Light Co.*, 27 S.W.2d 641 (Tex.Civ.App.— San Antonio 1930, writ ref'd).

■ Additionally, the Taylors do not have standing to claim recovery for tortious interference with their familial relationship. Although the supreme court's recent decision in *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983) permits parents to recover for the loss of love, advice, comfort, companionship and society, such recovery is again under the Texas Wrongful Death Statute. As elaborated above, Texas law dictates that this recovery is limited to parents, and the Taylors, as managing conservators, do not meet this legislative requirement.

While we are clearly bound by the statutory mandate here involved, we are also acutely aware of the Taylors' unique predicament: They accepted a handicapped, "unadoptable" child as their own. They chose to be managing conservators rather than adoptive parents only to insure that medical benefits would be available for his congenital condition. Natural parents could hardly have done more. In effect, they assumed all the duties and responsibilities of parents, yet they are statutorily excluded from legal recognition as such. However, notwithstanding the effect on their

special situation, we have no alternative but to defer to the legislature for any such statutory changes designed to bring about such recognition for people situated as the Taylors are.

The judgment of the trial court is therefore affirmed.