# `TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00254-CV

**Darlene Balas, as Next Friend of C. L. H., A. E. H., and L. P. H., Appellants**

**v.**

**Smithkline Beecham Corporation a/k/a Glaxosmithkline, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-06-001139, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a partial summary judgment in a suit for damages resulting from the alleged wrongful death of Brian Balas. The district court granted the partial summary judgment in favor of Smithkline Beecham Corporation a/k/a Glaxosmithkline ("GSK") with regard to the claims of the three children of Balas's widow, Darlene Balas ("Darlene"). The issue on appeal is whether the children, who were Balas's stepchildren, can recover for his death under the Texas Wrongful Death Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 71.001-.012 (West 2008). Because we hold as a matter of law that unadopted stepchildren are not "children" under the Act, we affirm the district court's order granting partial summary judgment in favor of GSK and dismissing the children's claims.

### BACKGROUND

In September 2000, Balas married Darlene, who had three children from a previous marriage. Three months later, Balas began taking the anti-depressant Paxil for the treatment of a

drinking problem. After he began taking Paxil, he experienced hallucinations and started exhibiting bizarre and disturbing behavior. In March 2001, he took his own life.

After his death, his parents and Darlene filed suit against GSK, the manufacturer of Paxil, and other defendants, bringing common-law claims and claims under the Texas Wrongful Death Act ("the Act") and the Texas Survival Statute. *See id*. §§ 71.001-.012, 71.021-.022 (West 2008). Darlene filed suit individually and as next friend of her three minor children. GSK filed a joint no-evidence and traditional summary-judgment motion with regard to the children's claims, alleging that because the children were not the biological or legally adopted children of Balas, they could not recover under the Act. The district court granted the motion. The parties then filed a motion to sever the children's claims from the suit, which the district court granted, making the partial summary judgment final and appealable. Darlene appeals from the trial court's order in three issues, alleging that (1) minor, dependent stepchildren should be considered "children" under the Act; (2) children who would be considered equitably adopted for heirship purposes should also be considered equitably adopted under the Act; and (3) excluding minor, dependent stepchildren from recovery under the Act violates equal protection.

**STANDARD OF REVIEW**

We review a no-evidence summary judgment de novo. *Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 855 (Tex. App.—Dallas 2007, pet. denied). A no-evidence summary judgment is essentially a pretrial directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). A defendant seeking a no-evidence summary judgment contends that there is no evidence of one or more essential elements of the plaintiff's claim. Tex. R. Civ.

P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). We consider the evidence in the light most favorable to the non-movant and disregard contrary evidence and inferences. *King Ranch*, 118 S.W.3d at 751. A no-evidence motion is properly granted if the non-movant does not produce more than a scintilla of probative evidence raising an issue of material fact with respect to the essential elements attacked by the movant. Tex. R. Civ. P. 166a(i); *King Ranch*, 118 S.W.3d at 751. More than a scintilla exists if reasonable people could differ in their conclusions about the evidence; evidence amounts to less than a scintilla if it does no more than create a surmise or suspicion of a fact. *King Ranch*, 118 S.W.3d at 751. The non-movant need not marshal its proof, but must point to evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i) cmt.; *Hamilton*, 249 S.W.3d at 426.

Like a no-evidence summary judgment, we also review a traditional summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). For a traditional summary-judgment motion to be granted, the movant must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Southwestern*, 73 S.W.3d at 215.

When, as here, the trial court's order does not indicate the grounds upon which the motion was granted, we must affirm the district court's order if any of the grounds presented is meritorious. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

3

## DISCUSSION

### *"Children" Under the Texas Wrongful Death Act*

In her first issue, Darlene contends that minor, dependent stepchildren should be included in the definition of "children" under the Act and that the district court therefore erred in granting summary judgment for GSK. This issue involves statutory construction, which is a question of law that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In resolving an issue of statutory construction, we are required, first and foremost, to follow the plain language of the statute. *Texas Health Ins. Risk Pool v. Southwest Serv. Life Ins. Co.*, 272 S.W.3d 797, 801 (Tex. App.—Austin 2008, no pet.). We read every word, phrase, and expression in a statute as if it were deliberately chosen, and we presume that words excluded from the statute are done so purposefully. *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). We must read the statute as a whole, rather than just isolated portions, giving meaning to the language that is consistent with other provisions in the statute. *Dallas County Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 872-73 (Tex. 2005); *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). We may also consider the common law, and we presume that the legislature enacted the statute with complete knowledge of and reference to existing law. *See* Tex. Gov't Code Ann. § 311.023(4) (West 2005); *Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008) (quoting *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)).

Recovery under the Act is limited to an exclusive class of persons that includes only "the surviving spouse, children, and parents of the deceased." Tex. Civ. Prac. & Rem. Code

4

Ann. § 71.004; *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 222 (Tex. 1988). The Act does not define "children." Darlene acknowledges that the district court's decision followed existing Texas case law, in which courts have consistently held that only biological or legally adopted children can recover under the Act. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 275 (Tex. 1995) (stating that "only biological or legally-adopted children of the decedent have standing" under Act); *Amos v. Central Freight Lines, Inc.*, 575 S.W.2d 636, 637-38 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ) (holding foster children not "children" under Act even though they lived with deceased for period of years and deceased filed petition for adoption before death); *Goss v. Franz*, 287 S.W.2d 289, 289-90 (Tex. Civ. App.—Amarillo 1956, writ ref'd) (holding foster child not "child" under Act even though deceased cared for him since early youth, treated him as natural child, and promised to adopt him); *cf. Robinson v. Chiarello*, 806 S.W.2d 304, 310-11 (Tex. App.—Fort Worth 1991, writ denied) (holding that aunt and uncle could not recover under Act because they were "neither the natural parents nor legal adoptive parents" of their nephew); *Taylor v. Parr*, 678 S.W.2d 527, 529 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (holding foster parents not "parents" under Act even though they assumed all duties and responsibilities of parents); *Boudreaux v. Texas & N.O.R. Co.*, 78 S.W.2d 641, 644-45 (Tex. Civ. App.—Beaumont 1935, writ ref'd) (concluding that stepmother not included within definition of "parent" in Act).

Darlene urges this Court to reach a different result, asserting that the children should not be excluded from recovering for Balas's wrongful death simply because he did not legally adopt them before his death. Darlene contends that this Court can "reinterpret" the term "children" in the

5

Act "in light of developing trends in law and in support of family values in society." In support of her position, she cites to several cases in which she alleges that courts have "reinterpreted" undefined terms in the Act to include more than what the terms did before. *See Shepherd v. Ledford*, 962 S.W.2d 28, 35 (Tex. 1998) (treating common-law wife as "spouse" under Act); *Faircloth*, 898 S.W.2d at 275 (Tex. 1995) (recognizing that adopted children are included in definition of "children" under Act); *Brown*, 764 S.W.2d at 223 (holding that "children" in Act includes illegitimate children); *Moore v. Lillebo*, 722 S.W.2d 683, 685 (Tex. 1986) (acknowledging that "damages" under Act include mental-anguish damages and declining to require proof of physical manifestation of mental anguish in order for family member to recover under Act); *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 551 (Tex. 1985) (recognizing that "damages" under Act include mental-anguish damages and holding that mental-anguish damages are recoverable by all family members listed in Act); *Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Tex. 1983) (abolishing pecuniary-loss rule as measure of damages under Act and allowing parent to recover damages for mental anguish for loss of minor child). Although Darlene refers to the courts' actions in these cases as "reinterpreting" terms in the Act, only one of the cited cases actually abolishes a previous interpretation and adopts another. *See Sanchez*, 651 S.W.2d at 251. There, the supreme court explained that it was not overstepping its role or usurping the role of the legislature by changing the definition of "damages" under the Act because it was merely abolishing a court-made rule in favor of another court-made rule. *See id*. at 251-52; *Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (stating that supreme court may modify judicially created doctrines). As an intermediate court of appeals, however, we must follow established law.

6

*See Trammel's*, 80 S.W.3d at 585. We have no authority to modify or abrogate established precedent. *See id*. Although the supreme court has addressed the definition of "children" under the Act only in dicta, the court clearly stated that only biological and legally adopted children have standing under the Act, *see Faircloth*, 898 S.W.2d at 275, a conclusion consistent with other Texas case law. *See Robinson*, 806 S.W.2d at 310-11; *Taylor*, 678 S.W.2d at 529; *Amos*, 575 S.W.2d at 637-38; *Goss*, 287 S.W.2d at 289-90; *Boudreaux*, 78 S.W.2d at 644-45. There is no contrary authority. Accordingly, we hold that "children" under the Act is limited to biological and legally adopted children.

We also disagree with Darlene's argument that we should adopt her interpretation of "child" because the Act was patterned after "Lord Campbell's Act," a statute passed by the British Parliament in 1840 that specifically included a stepchild within the definition of "child." *See* The Fatal Accident Act, 9 & 10 Vict., ch. 93 § 5 (1846); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 96 (Tex. 2004). In Lord Campbell's Act, the parliament defined "child" to include a son, daughter, grandson, granddaughter, stepson, and stepdaughter. *See* The Fatal Accident Act, 9 & 10 Vict., ch. 93 § 5. Darlene argues that because the Act was patterned after Lord Campbell's Act, courts should also adopt the same definition of "child." In response, GSK contends that the fact that the legislature patterned the Act after Lord Campbell's Act but did not use the same definition of "child" shows that the legislature did not intend to adopt that definition. We agree with GSK. Considering that the legislature was familiar with the language in Lord Campbell's Act while drafting the Act but chose not to provide a definition of the term "child," we can only conclude that it did so purposely. *See Gables Realty Ltd. P'ship*, 81 S.W.3d at 873 (stating that courts must read every word, phrase, and expression in statute as if deliberately chosen and presume that words

7

excluded from statute are done so purposefully); *Boudreaux*, 78 S.W.2d at 644 (stating that because Lord Campbell's Act provided specific definition of "parent" but Act did not, legislature intended not to adopt same definition). We therefore reject this argument.

Darlene also asserts that the Act's definition of "children" should include stepchildren because numerous other Texas statutes either include stepchildren in the definition of "children" or otherwise treat stepchildren as children. *See* Tex. Ins. Code Ann. §§ 1551.004(b), 1601.004(b) (West 2009); Tex. Lab. Code Ann. § 401.011(7) (West Supp. 2008); Tex. Gov't Code Ann. § 572.006 (West 2004); Tex. Loc. Gov't Code Ann. § 157.063 (West 2008); Tex. Penal Code Ann. § 25.02(a)(2) (West Supp. 2008); Tex. Fam. Code Ann. § 6.206 (West 2006); Tex. Hum. Res. Code Ann. § 31.015(b)(3) (West Supp. 2008). We agree with Darlene that there are times in which courts look to other statutes to aid in statutory construction. *See* Tex. Gov't Code Ann. § 311.023(4); *Moore v. Trevino*, 94 S.W.3d 723, 727 (Tex. App.—San Antonio 2002, pet. denied). However, in *Moore*, the issue was one of first impression, and because the statute there did not provide a definition of the phrase "healing arts," the court looked to definitions of the phrase in other statutes. 94 S.W.3d at 726-27. The case before us is distinguishable because unlike *Moore*, there is case law regarding who constitutes a "child" under the Act. *See Faircloth*, 898 S.W.2d at 275; *Robinson*, 806 S.W.2d at 310-11; *Taylor*, 678 S.W.2d at 529; *Amos*, 575 S.W.2d at 637-38; *Goss*, 287 S.W.2d at 289-90; *Boudreaux*, 78 S.W.2d at 644-45. Thus, we are not persuaded by other statutory definitions of the term. Further, although we sympathize with Darlene's argument, it is not our place as an intermediate court of appeals to depart from established case law or intrude upon the role of the legislature. *See Trammel's*, 80 S.W.3d at 585; *Taylor*, 678 S.W.2d at 529-30. We acknowledge that no Texas court has specifically held that stepchildren are not "children" under the

Act, but Texas law is clear that regardless of how much the relationship between the deceased and the child resembles a traditional parent-child relationship, only biological or legally adopted children are included within the term's definition. It is undisputed that Balas was not the biological father of the children and that, although the summary-judgment evidence shows that he spoke of his desire to adopt them, he never took steps to do so before his death. Accordingly, we overrule Darlene's first issue.

### Equitable Adoption

In her second issue, Darlene alleges that Balas equitably adopted the children before his death and that equitably adopted children should qualify as children under the Act. Darlene acknowledges that it is only cases involving heirship proceedings under the probate code in which courts have allowed a person to recover based on an equitable-adoption theory. *See Heien v. Crabtree*, 369 S.W.2d 28, 30 (Tex. 1963); *Luna v. Estate of Rodriguez*, 906 S.W.2d 576, 582 (Tex. App.—Austin 1995, no writ). In contrast, every court that has addressed a claim of equitable adoption under the Texas Wrongful Death Act has rejected it. *See Byrnes v. Ford Motor Co.*, 642 F. Supp. 309, 311 (E.D. Tex. 1986) (stating that "Texas courts do not place equitably adopted children within the terms of the [Act]"); *Amos*, 575 S.W.2d at 638-39 (rejecting equitable-adoption theory under Act where deceased had filed petition for adoption before death); *Goss*, 287 S.W.2d at 289-90 (rejecting equitable-adoption theory under Act where deceased had promised to adopt child and treated him as natural child). Yet, Darlene urges this court to extend the recognition of an equitable-adoption theory to this case based on a "more reality-based understanding of the word 'children'" and "in light of the real-world parent-child relationship." We decline to do so. Even assuming that

the children were equitably adopted by Balas, we will not depart from established case law rejecting the equitable-adoption theory and holding that only biological and legally-adopted children qualify as "children" under the Act. *See Faircloth*, 898 S.W.2d at 275; *Robinson*, 806 S.W.2d at 310-11; *Taylor*, 678 S.W.2d at 529; *Amos*, 575 S.W.2d at 637-38; *Goss*, 287 S.W.2d at 289-90; *Boudreaux*, 78 S.W.2d at 644-45. Further, we will not engage in conduct that is within the purview of the legislature. *See Taylor*, 678 S.W.2d at 529-30. We therefore overrule Darlene's second issue.

### Equal Protection

In her third issue, Darlene asserts that construing the Act to exclude stepchildren violates the Equal Protection Clause of the U.S. Constitution. However, Darlene did not raise this issue in the district court. To preserve a complaint for appellate review, the complaining party must present the complaint to the trial court by timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1). This is true even for constitutional claims. *See Texas Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001). Darlene did not raise an equal-protection argument in her pleadings or her response to GSK's motion for summary judgment. As a result, she waived this issue on appeal. *Id*.

Even if she had not waived the issue, we are not persuaded by her equal-protection argument. Darlene cites only one case in support of her argument, *see Levy v. Louisiana*, 391 U.S. 68 (1968), and the case is distinguishable from the case before us. In *Levy*, the U.S. Supreme Court held that Louisiana's exclusion of illegitimate children from the definition of "children" under the Louisiana wrongful death statute violated the equal protection clause because it constituted "an invidious discrimination against a particular class." 391 U.S. at 71. There, the case involved

five illegitimate children suing for the alleged wrongful death of their mother, and the court stated that "[t]he rights asserted here involve the intimate, familial relationship between a child and his own mother." *Id*. The U.S. Supreme Court later expressed the reason for decisions such as the one in *Levy*, stating in a later case that "[o]ur consideration of these cases has been animated by a special concern for discrimination against illegitimate children." *Pickett v. Brown*, 462 U.S. 1, 7 (1983). The Texas Supreme Court has likewise held that illegitimate children have a right to sue under the Act. *See Brown*, 764 S.W.2d at 223. However, the standing of illegitimate children, who are the biological children of the deceased parent and would only be excluded from recovery based on discrimination, is considerably different from the standing of stepchildren, who often have two living biological parents in addition to their stepparents. Here, the record shows that Balas's stepchildren had two biological parents who both had parental rights at the time of Balas's death. The children could have brought a wrongful death suit for the death of either of their biological parents. Thus, *Levy* does not apply to this case, and we overrule Darlene's third issue.

## CONCLUSION

Because we hold as a matter of law that unadopted stepchildren are not "children" under the Act, we affirm the district court's summary-judgment order.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Patterson and Puryear

Affirmed

Filed: June 18, 2009