Kenneth **ROBINSON** and Jackie Robinson, Appellants,

v.

Richard A. **CHIARELLO**, M.D. and Richard A. Chiarello, M.D., P.A., and Arlington Memorial Hospital, Appellees.

No. 2–89–183–CV.

Court of Appeals of Texas, Fort Worth.

March 12, 1991.

Rehearing Overruled April 23, 1991.

Robert W. Hammer, Fort Worth, for appellants.

David B. Dowell, Cantey & Hanger, Fort Worth, Philipa M. Remington, Cowles & Thompson, Dallas, for appellees.

Before WEAVER, C.J., and JOE SPURLOCK, II, and DAY, JJ.

## OPINION

WEAVER, Chief Justice.

Appellants, Kenneth Robinson and Jackie Robinson, appeal the grant of two partial summary judgments, one in favor of appellee Arlington Memorial Hospital, hereinafter the "hospital," and the other in favor of Richard A. Chiarello, M.D., and Richard A. Chiarello, M.D., P.A., hereinafter "Dr. Chiarello." Appellants brought suit against appellees in two separate capacities following the death of their nephew, Robert Brown. Jackie Robinson asserted a claim against appellees in her capacity as the Administrator of the Estate of Robert Brown under the Texas Survival Statute. Appellants sued in their individual capacity alleging causes of action under the Texas Wrongful Death Statute and under the common law theory of negligent infliction of emotional anguish and/or bystander re-

covery. Both appellees moved for a partial summary judgment on all claims brought by the Robinsons in their individual capacity. The trial court granted both motions for partial summary judgment and severed the individual claims of the appellants from the action brought by Jackie Robinson as the Administrator of the Estate of Robert Brown. Appellants perfected this appeal and raise four points of error. We affirm.

Before discussing the merits of this appeal, we will address the cross-points raised by both the hospital and Dr. Chiarello, claiming that the appellants failed to timely file the transcript with this court.

Rule 54(a) of the Texas Rules of Appellate Procedure requires the appellant to file the transcript with the court of appeals within sixty days after the judgment is signed. In this case, the trial court granted only partial summary judgments to appellees, and a summary judgment that does not dispose of all the parties and claims is not final, but interlocutory. *Teer v. Duddlesten*, 664 S.W.2d 702, 703 (Tex.1984). A partial or interlocutory summary judgment may be made final if the judgment severs the issues and parties that are left unadjudicated. *Pan American Petroleum Corp. v. Texas Pacific Coal & Oil Co.*, 159 Tex. 550, 324 S.W.2d 200, 201 (1959).

Here, the trial court ordered a severance of the parties and claims on July 27, 1989, which made final the partial summary judgments. Hence, the date of the severance is the date the appellate timetable began to run for appellants to file the transcript with this court. *See Stockton v. Summers*, 504 S.W.2d 637, 638 (Tex.Civ. App.—Houston [14th Dist.] 1974, no writ). (Where summary judgment was rendered on one issue, but other claims remained to be decided, filing time did not begin to run until all claims were final so that party could appeal grant of summary judgment.)

Appellants did not file the transcript in this court until October 17, 1989, some eighty-two days after the signing of the order granting severance of appellants' individual claims. Consequently, the transcript was timely filed with this court only if appellants properly filed motions for new trial so as to extend the time for filing the transcript from sixty days to one hundred and twenty days from the date the order of severance was signed. Tex.R.App.P. 54(a).

We first address the hospital's contention that the appellants are not entitled to the additional one hundred and twenty days as provided by rule 54(a) because they had failed to file a timely, "live" motion for new trial.

The hospital points out that appellants filed two motions for new trial, the first was filed on May 25, 1989, and the second was filed on July 21, 1989. The hospital contends that these motions were premature, because they were filed before the date the order granting severance was signed, July 27, 1989. The hospital acknowledges that rule 306c of the Texas Rules of Civil Procedure provides that although a motion for new trial is filed prematurely it "shall be deemed to have been filed on the date of but subsequent to the date of signing of the judgment the motion assails." Tex.R.Civ.P. 306c. The hospital claims, however, that these motions for new trial are ineffective to extend the filing time because they were effectively overruled by the trial court on July 25, 1989, two days before the trial court signed the severance on July 27, 1989. Thus the motions for new trial were not "live" pleadings and could not be "resurrected" by rule 306c. The hospital argues that while only appellant's first motion for new trial was actually overruled before the trial court signed the order granting the severance, appellants' second motion for new trial merely supplemented their first motion for new trial, and the hospital claims that both motions were overruled by the trial court in its motion overruling appellants' first motion for new trial on July 25, 1989. We disagree.

The trial court signed three separate orders overruling appellants' two motions for new trial. The first order was signed July 25, 1989, and stated that it was considering appellant's motion for new trial that was heard on June 29, 1989 (appellants' first motion for new trial). The second order related to Dr. Chiarello. The third order

stated that it was overruling the appellants' motion for new trial that was filed on July 21, 1989 (appellants' second motion for new trial). The record clearly shows that the trial court had only ruled on the appellants' first motion for new trial by the time the severance was signed. Thus the second motion for new trial, although prematurely filed, was not overruled before the severance was granted and was still a "live" pleading that fell within the requirements of rule 306c. The hospital's cross-point is overruled.

Dr. Chiarello likewise complains that the appellants failed to timely file the transcript with this court. He argues, however, that neither appellant's first nor second motions for new trial applied to him. Dr. Chiarello points out that the first motion for new trial could not possibly apply to him because the first motion for new trial was filed before Dr. Chiarello's motion for partial summary judgment had been granted. We agree.

Dr. Chiarello next claims that appellants' second motion for new trial also does not apply to him because it contains the exact same information as the first motion for new trial, except that the date on the two motions was changed, and that neither motion makes reference to the partial summary judgment granted to Dr. Chiarello. He directs us to that portion of the appellants' second motion for new trial that states that appellants' motion is in response to the order granting the hospital's partial summary judgment, but made no reference to Dr. Chiarello's grant of a partial summary judgment. However, Dr. Chiarello neglects to point out that the appellants' second motion for new trial requests a new trial on all causes of action, not just against one party. Further, the motion was filed after both summary judgments had already been granted, and to read the motion to apply only to one party and not the other would be highly illogical. Further, appellants argued in their second motion for new trial that the *"[d]efendants were not entitled to a summary judgment pursuant to rule 166a of the Texas Rules of Civil Procedure ..."*. In addition, Dr.

Chiarello was served with a copy of this motion and was put on notice of its contents. The trial court likewise must have assumed that this second motion for new trial also applied to Dr. Chiarello because he signed an order on July 28, 1989, denying appellants' a new trial as against Dr. Chiarello. As we discussed above, the second motion for new trial was still a "live" pleading that fell within the purview of rule 306c and would entitle appellants to the additional time to file a copy of the transcript with this court under rule 54(a). Dr. Chiarello's cross-point is overruled.

We now address appellants' points of error claiming that the trial court erred in granting both appellees a partial summary judgment ordering that appellants take nothing on all claims brought by appellants in their individual capacity. In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); Tex.R.Civ.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the nonmovant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Insurance Company,* 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Montgomery,* 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American,* 391 S.W.2d at 47.

We note that appellants sought to recover damages for mental anguish after witnessing the death of their nephew, Robert Brown, as a result of the allegedly negligent acts of the hospital and Dr. Chiarello. Appellants alleged in their petition that:

On or about December 6, 1985, Robert began experiencing nausea, vomiting and fever. On December 9, 1985, Robert's parents took him to the Arlington Memorial Hospital Emergency Room where Dr. Chiarello was notified. Dr. Chiarello examined Robert and took a medical history from Jackie and Kenneth Robinson. Dr. Chiarello admitted Robert and ordered lab work, IV fluids, and performed a lumbar puncture. Later that day, Dr. Chiarello requested a neurological consult. Robert Brown arrested and on December 13, 1985, he died secondary to a brain stem herniation.

. . . .

Furthermore, as a direct and proximate result of the Defendants' negligent acts and/or omissions, Plaintiffs, Jackie and Kenneth Robinson, Individually, suffered damages in the form of past, present and future mental anguish and emotional distress resulting from seeing and experiencing the circumstances surrounding Robert Leroy Brown's injury and death.

In response to appellees' motion for summary judgment, appellants admitted that they did not witness the negligent acts of Dr. Chiarello, but that they were forced to stand by and watch Robert Brown's decline and ultimate death. Appellants alleged that Dr. Chiarello failed to timely diagnose, treat, test, and refer Robert Brown to a neurologist and that the hospital failed to supervise and monitor Dr. Chiarello and to report on Robert Brown's condition.[1]

In response, both appellees filed motions for summary judgment which were denied by the trial court. Later, both appellees filed virtually identical motions for partial summary judgment on the appellants' individual claims. In their motions for partial summary judgment, appellees urged that (1) there is no common law recovery for the wrongful death of another and that the appellants did not qualify as beneficiaries under the wrongful death statute, and (2) that bystander recovery is not a cause of action in Texas, or alternatively, if it is, appellants failed to meet the threshold requirements in order to recover under such a cause of action. Neither the hospital nor Dr. Chiarello filed supporting affidavits with their motions for partial summary judgment, but the hospital did file the answers to interrogatories of Jackie and Kenneth Robinson. Appellants, on the other hand, included affidavits by Jackie Robinson and Kenneth Robinson which claimed that they were the parents of Robert Brown. Appellants also filed with their response to the hospital's motion for partial summary judgment two copies of powers of attorney given by the parents of Robert Brown. In their response to Dr. Chiarello's motion for partial summary judgment, appellants filed another affidavit given by Jackie Brown where she sets out in more detail the events that lead to the death of Robert Brown. The trial court separately granted both motions for partial summary judgment without specifying the reasons. Hence, where the judgment does not set forth the specific grounds upon which it was granted, the judgment must be affirmed if it may be properly upheld on any one of the alternative grounds before the trial court. *Sutherland v. Caballero*, 750 S.W.2d 840, 841 (Tex.App.—El Paso), *writ denied per curiam*, 759 S.W.2d 945 (Tex. 1988); *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

---

1. Appellants argue that they raised in their third amended original petition that they also brought suit under a pure form of negligent infliction of mental anguish. As we read their petition, they allege facts that would give rise to a bystander's recovery cause of action. We also note that appellants allege in their petition that they "suffered injuries and damages in the form of men-

tal anguish, grief, bereavement, loss of society and companionship." A parent's claim for loss of child's consortium is a separate cause of action, but appellants fail to argue on appeal that it was error for the trial court to have dismissed this cause of action. *See McGovern v. Williams,* 741 S.W.2d 373, 374 (Tex.1987).

■ Both appellees argued in their motions for partial summary judgment that the Texas Supreme Court has not explicitly adopted negligent infliction of mental anguish upon a bystander as a cause of action. Appellants attack this contention under their first point of error by arguing that the trial court erred in granting the defendants' motions for partial summary judgment "on all claims brought by plaintiffs," because negligent infliction of mental anguish and/or bystander recovery are viable causes of action in Texas. We agree with appellants that under Texas law a bystander may recover damages after witnessing a close relative suffer a traumatic injury as a result of a defendant's negligent conduct. *See Freeman v. City of Pasadena,* 744 S.W.2d 923, 924 (Tex.1988); and many other court of appeal cases holding to that effect.[2]

Under their second and third points of error, appellants claim that appellees failed to negate one or more essential elements of appellants' allegation of negligent infliction of mental anguish and/or bystander recovery and that the summary judgment evidence raised a material fact issue.

The cause of action of which allows a bystander to recover for mental anguish possesses an additional duty/foreseeability element. When bystander recovery was initially developed, many feared that allowing an individual to recover for the emotional trauma experienced after witnessing a close relative injured in a traumatic accident would open the flood gates to excessive liability and fraudulent claims. *See Dillon v. Legg,* 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968). In an effort to combat this problem, the California Supreme Court, in the seminal case, *Dillon v. Legg,* developed guidelines for courts to follow to prevent unforseen plaintiffs from recovering from unsuspecting defendants. In *Freeman,* the Texas Supreme Court employed this guideline to address a bystand-

er recovery issue, and several Texas courts of appeals have been using this standard for some time.[3] "In determining ... whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following:

(1) Whether plaintiff was located near the scene of the accident *as contrasted with one who was a distance away from it.* (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observation of the accident, *as contrasted with learning of the accident from others after its occurrence.* (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship."

*Freeman,* 744 S.W.2d at 923–924 (emphasis original); quoting *Dillon v. Legg; and see* footnote 3.

■ This rule, however, is not inflexible, and is tempered with the caveat that each case must be evaluated on its own merits. *Freeman,* 744 S.W.2d at 924; *Landreth,* 570 S.W.2d at 489. "[I]n light of these factors the court will determine whether the accident and harm was *reasonably* foreseeable." *Freeman,* 744 S.W.2d at 924; quoting *Dillon v. Legg.*

In the case at hand, both appellees in their motions for summary judgment claimed that appellants failed to satisfy the second and third elements of the duty/foreseeability guideline, and hence, they were entitled to summary judgment as a matter of law.

No party has cited us to Texas cases dealing with bystander recovery arising from allegedly negligent acts of a physician or hospital, and our research has not revealed any. Nevertheless, we keep in mind that the *Dillon* test professed to limit

---

2. *See, e.g., McClellan v. Boehmer,* 700 S.W.2d 687, 690 (Tex.App.—Corpus Christi 1985, no writ); *City of Austin v. Davis,* 693 S.W.2d 31, 33 (Tex.App.—Austin 1985, writ ref'd n.r.e.); *Genzer v. City of Mission,* 666 S.W.2d 116, 121–22 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.

e.); *General Motors Corp. v. Grizzle,* 642 S.W.2d 837, 844 (Tex.App.—Waco 1982, writ dism'd); *Landreth v. Reed,* 570 S.W.2d 486, 489 (Tex.Civ. App.—Texarkana 1978, no writ).

3. See footnote 2.

the otherwise potentially infinite liability which would follow every negligent act.

With this in mind, we look to the second element of the *Dillon* test which requires that a person's shock result from a direct emotional impact upon that person from a contemporaneous perception of the accident as distinguished from learning of the accident from others after its occurrence. This language contemplates a sudden and brief event causing the child's injury. The *Dillon* opinion even used the term "accident" to describe the trauma-causing event. In the instant case, appellants allege·no triggering event nor point to some event that would give rise to some traumatic occurrence, such as a car accident. Appellants' claims are based upon the alleged medical malpractice of the attending physician and the hospital's alleged failure to monitor the child's condition, as well as supposed vicarious liability for the physician's acts. The appellants' suffering began when Robert's health started to fail and they continued to suffer as they watched events unfold over several days. They allege a string of events that occurred over an extended period of time, much of which happened before the appellees were even involved in the case. Undoubtedly, the appellants' suffering and pain began when Robert's health began to decline, and we do not intend to detract from that very real pain. However, failure of diagnosis, of course, is not an event which can itself be perceived by the layman. But to extend the rule of *Dillon* to the entire area of bystander injury to a parent, in situations involving improper diagnosis of a child's ailment, is an extreme broadening of the rule which the California Supreme Court apparently sought to limit, and the extension of this cause of action to the whole field of medical malpractice in diagnosis appears to us an unwarranted and impractical expansion.

Based on our analysis, we do not find that appellants had plead sufficient facts to place themselves within the guidelines of bystander recovery. Appellants' second and third points of error are overruled.

Appellants complain under their fourth point of error that the trial court erred in granting the appellees' motions for partial summary judgment because the appellants are wrongful death beneficiaries under the Wrongful Death Statute pursuant to recognized legal principles of "equitable adoption" and "in loco parentis."

The Texas Wrongful Death Statute provides that an action to recover damages for the wrongful death of a person "is for the exclusive benefit of the surviving spouse, children, and parents of the deceased." *See* TEX.CIV.PRAC. & REM.CODE ANN. § 71.004(a) (Vernon 1986). Whether appellants can qualify as "parents" as defined under this statute will resolve this point of error.

Appellants admit that they were neither the natural nor legal adoptive parents of Robert Brown. Appellants first argue that they fall within the statutory definition of "parent" because of the doctrine of *"in loco parentis."*

In *Taylor v. Parr*, 678 S.W.2d 527, 529 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), the Fourteenth District Court of Appeals held that individuals who stood as *in loco parentis*, nevertheless did not come within the exclusive list of beneficiaries. Hence, appellants' argument is fruitless.

Appellants next claim that they fall within the statute because they had equitably adopted Robert Brown. Appellants admit in their brief that no Texas cases have found that parents who have equitably adopted a child may recover under the Wrongful Death Statute. Appellants urge that we expand the scope of beneficiaries to include those individuals who have been equitably adopted.

In *Amos v. Central Freight Lines, Inc.*, 575 S.W.2d 636, 638–39 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ), the First District Court of Appeals found that even if an equitable adoption is shown to exist, the statute does not extend to include this class of people. The court reasoned that benefits conferred to individuals by virtue of this statute permit recovery to an exclusive class of individuals. Hence, since it is

undisputed that appellants were neither the natural parents nor legal adoptive parents of Robert Brown, they are barred from recovery as a matter of law.

Appellants' fourth point of error is overruled.

The trial court's judgment is affirmed.