Cavanaugh v. Jones 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-344-CV




BERNADETT NELL CAVANAUGH,



 APPELLANT


vs.





DR. PATSY JONES, DR. IRA BELL, PHYSICIANS CLINIC OF TEXAS, P.A.,


INDIVIDUALLY AND d/b/a AUSTIN FAMILY MEDICAL CENTER,



 APPELLEES



 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 492,165, HONORABLE JOE B. DIBRELL, JUDGE PRESIDING


 




 Bernadett Nell ("Nell") Cavanaugh appeals the grant of a partial summary judgment
in favor of appellees Dr. Patsy Jones, Dr. Ira Bell, and Physicians Clinic of Texas, P.A.,
Individually and d/b/a Austin Family Medical Center ("PCT"). The partial summary judgment
became a final summary judgment because plaintiff Bernadett Denise ("Denise") Cavanaugh's
claims against Dr. Jones, Dr. Bell, and PCT were severed before rendition of summary judgment
against appellant. In her sole point of error, Nell Cavanaugh asserts that the trial court erred in
granting summary judgment that she take nothing because her pleadings failed to state a cause of
action for negligent infliction of emotional distress. (1) We will affirm the trial court's summary
judgment.


BACKGROUND


 Nell Cavanaugh sought to recover damages for the mental anguish she suffered as
the result of witnessing the death of her granddaughter, Sierre Deshay ("Sierre") Cavanaugh,
following the allegedly negligent acts of Dr. Jones, Dr. Bell, and PCT. From May 14 to
December 20, 1988, Sierre Cavanaugh was a patient of Dr. Jones, Dr. Bell, and PCT. (2) In her
petition, Nell Cavanaugh alleges the following series of negligent acts occurring from May to
December 1988.

 Sierre Cavanaugh was born with a heart murmur that was detected on May 15,
1988, by the treating physician who discharged her from the hospital after her birth. The treating
physician provided Dr. Jones with a discharge summary indicating the presence of a heart
murmur. The treating physician also telephoned Dr. Jones to inform her of the baby's heart
murmur. Dr. Jones and PCT failed to note this information on Sierre Cavanaugh's chart. Sierre
was seen by Dr. Bell on May 16th and by Dr. Jones on June 21st; both doctors failed to detect
the heart murmur. On September 14, 1988, Dr. Jones noted the baby's rapid respiration and a
heart murmur and recommended blood work and a chest x-ray. Relying on her own ability to
interpret a pediatric chest x-ray, Dr. Jones failed to make significant findings regarding Sierre's
congenital heart problems. Dr. Jones, Dr. Bell, and PCT also failed to take notice of, or place
in Sierre Cavanaugh's file, a radiologist's interpretation of this x-ray which indicated that Sierre
had an enlarged heart; the radiologist had recommended that further studies be conducted to
determine the baby's cardiac status. On September 28, 1988, Dr. Jones saw Sierre Cavanaugh
and again did not address her heart condition.

 Sierre was treated in the emergency room at St. David's Hospital on November 29,
1988. The treating physician telephoned Dr. Bell and discussed the baby's poor health and the
need for further medical treatment. Dr. Bell failed to ensure that this information was placed in
Sierre's file and failed to follow through on recommended care. Dr. Bell saw Sierre on December
5, 1988, and again failed to detect a heart murmur or address her cardiac status. The next day,
the treating physician from St. David's Hospital reviewed a chest x-ray and indicated to Dr. Bell
that Sierre had an enlarged heart. Dr. Bell did not follow up on this report and failed to ensure
that this information was placed in Sierre's file.

 Finally, on December 20, 1988, Dr. Jones examined Sierre in the clinic and placed
her on oxygen. When Sierre was stabilized, Dr. Jones advised Nell Cavanaugh, Sierre's
grandmother, and Denise Cavanaugh, Sierre's mother, that the baby needed to be admitted to
Brackenridge Hospital. Because they were afraid Sierre would not survive the trip to the hospital
on the city bus, the only means of transportation available to them, Nell and Denise Cavanaugh
requested medical transportation from Dr. Jones. According to the facts alleged, Dr. Jones
assured them that Sierre would "make it" to the hospital if taken by public transportation. (3)

 During the bus ride to the hospital, Nell and Denise Cavanaugh realized that the
baby had closed her eyes and was no longer responsive. They asked the bus driver to make a
detour directly to Brackenridge Hospital, but their request was denied. They got out of the bus
two blocks from the hospital and began to run, stopping in front of the Erwin Center where
passersby tried to assist them. A fireman and nursing school student attempted cardiopulmonary
resuscitation, but could not revive Sierre. By the time Emergency Medical Services arrived with
an ambulance, the baby had died.



DISCUSSION


 We are reviewing the trial court's decision to grant a motion for summary judgment
that is directed solely to the pleadings. Therefore, we must take as true every allegation of the
pleading against which the motion is directed. Labbe v. Carr, 369 S.W.2d 952, 954 (Tex. Civ.
App.--San Antonio 1963, writ ref'd n.r.e.). If the pleading, when liberally construed, is sufficient
to show a fact issue, the motion must be overruled. Abbott v. City of Kaufman, 717 S.W.2d 927,
929 (Tex. App.--Tyler 1986, writ dism'd). Moreover, all doubts as to the existence of a genuine
issue of material fact must be resolved against the moving party, and the opposing party is entitled
to the benefit of every reasonable inference that can properly be drawn in her favor. Id. Taking
all of appellant's allegations as true, we must consider whether any of the allegedly negligent acts
support a cause of action.

 The law of negligent infliction of emotional distress is analyzed by reference to two
theories of recovery: the bystander theory and the direct victim theory. The source of the duty
the defendant owes to the plaintiff distinguishes bystander cases from direct victim cases. 
Bystander cases arise in the context of physical injury or emotional distress caused by the
negligent conduct of a defendant with whom the plaintiff had no preexisting relationship, and to
whom the defendant had not previously assumed a duty of care beyond that owed to the public in
general. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 365-67 (5th
ed. 1984). As such, bystander recovery can be premised only upon a defendant's violation of a
duty not to negligently cause emotional distress to people who observe conduct that causes harm
to another. The bystander cases, beginning in California with Dillon v. Legg, 441 P.2d 912 (Cal.
1968), address the question of duty in situations in which a plaintiff seeks to recover damages as
a witness to the negligent injury of another person. In Texas as well, the courts resolve the duty
issue in bystander recovery cases by application of the guidelines set forth in Dillon. See Boyles
v. Kerr, 855 S.W.2d 593, 598 (Tex. 1993).

 The Texas Supreme Court has determined that there is no general duty to refrain
from negligently inflicting emotional distress. Id. at 597 (overruling St. Elizabeth Hosp. v.
Garrard, 730 S.W.2d 649 (Tex. 1987) to the extent it recognizes an independent right to recover
for negligently inflicted emotional distress). The supreme court stated that "mental anguish
damages should be compensated only in connection with defendant's breach of some other duty
imposed by law." Boyles, 855 S.W.2d at 596. The court noted that its holding "does not affect
the right of bystanders to recover emotional distress damages suffered as a result of witnessing
a serious or fatal accident." Id. at 597. The court reaffirmed that the rules set forth in Dillon
govern bystander recovery in Texas, and concluded that "[b]efore a bystander may recover, he
or she must establish that the defendant has negligently inflicted serious or fatal injuries on the
primary victim." Id. at 598.

 Recognizing that the Texas Supreme Court has abrogated an independent cause of
action based upon negligent infliction of emotional distress, appellant argues that her relationship
with her granddaughter's doctors constituted a "special relationship" giving rise to a preexisting
duty sufficient to support her claim for damages. Appellant cites no authority for her position that
the duty the doctors owed their patient, Sierre Cavanaugh, flowed also to the patient's
grandmother. In fact, the authorities appellant does cite in her brief discuss the relationship
between the doctor and the patient, not between the doctor and the patient's parent or grandparent. 
See, e.g., Childs v. Weis, 440 S.W.2d 104 (Tex. Civ. App.--Dallas 1969, no writ) (addressing the
issue of whether a doctor-patient relationship was established); Ross v. Friddell, 423 S.W.2d 658
(Tex. Civ. App.--Tyler 1967, writ ref'd n.r.e.) (holding that a surgeon who undertakes treatment
of a patient impliedly contracts with and represents to the patient that he possesses a reasonable
degree of skill).

 Even if appellant could claim the same rights as a parent based on her status as one
of Sierre's primary caretakers, there would still be no preexisting duty that would circumvent
analysis of her cause of action under the Dillon guidelines. In Texas, there are only two situations
in which someone other than the direct victim of a tort may recover damages for mental anguish--a
suit brought under the Texas Wrongful Death Statute, Tex. Civ. Prac. & Rem. Code Ann. §
71.001-.011 (West 1986) (recovery limited to decedent's spouse, parents, and children), and a
bystander suit brought by a plaintiff who has witnessed a close relative's death or injury caused
by the defendant's wrongful acts. See Reagan v. Vaughn, 804 S.W.2d 463, 467 (Tex. 1990);
Freeman v. City of Pasadena, 744 S.W.2d 923 (Tex. 1988). (4) Although appellant claims to stand
in a parental relationship to Sierre Cavanaugh because she was one of Sierre's two primary
caretakers, as Sierre's grandmother she cannot recover under the Wrongful Death Statute. Thus,
her only remaining avenue of recovery is a bystander cause of action.

 In Texas, the bystander cause of action is limited to those persons meeting the
requirements of Dillon, the California case first delineating guidelines for identifying and limiting
the class of persons who might recover damages for mental anguish suffered as a result of
witnessing a tort committed against another person. Boyles, 855 S.W.2d at 598. (5) The Dillon
requirements for bystander recovery are:



(1) Whether plaintiff was located near the scene of the accident as contrasted
with one who was a distance away from it.


(2) Whether the shock resulted from a direct emotional impact upon
plaintiff from the sensory and contemporaneous observance of the
accident, as contrasted with learning of the accident from others after
its occurrence.


(3) Whether plaintiff and the victim were closely related, as contrasted
with an absence of any relationship or the presence of only a distant
relationship.



Dillon, 441 P.2d at 920 (emphasis added). There is no dispute that Nell Cavanaugh witnessed
Sierre Cavanaugh's death, and in that respect has met the first Dillon requirement. Nell
Cavanaugh stated in her seventh amended original petition that she is the grandmother of the
deceased and therefore meets the third Dillon requirement. Moreover, appellees conceded during
oral argument that appellant's pleadings allege facts that meet both the first and third requirements
of the Dillon test. Therefore, the only issue in this case is whether appellant has alleged the
contemporaneous perception of a brief and shocking event that caused injury or death to Sierre
Cavanaugh.

 Few Texas cases have addressed the issue of bystander recovery in a medical
malpractice context. See University of Tex. Medical Branch at Galveston v. York, 808 S.W.2d
106 (Tex. App.--Houston [1st Dist.] 1991, writ granted) (declining to address the issue of
bystander liability because the record contained no evidence that the father had suffered mental
anguish); Robinson v. Chiarello, 806 S.W.2d 304 (Tex. App.--Fort Worth 1991, writ denied)
(refusing to extend bystander recovery to the entire field of medical malpractice in diagnosis). 
The leading case in Texas dealing with bystander recovery and medical malpractice, and the case
upon which appellees chiefly rely, is Robinson. Kenneth and Jackie Robinson sought to recover
for mental anguish after witnessing the death of their nephew, Robert Brown, caused by the
allegedly negligent acts of the hospital and Dr. Chiarello. Robinson, 806 S.W.2d at 308. The
Robinsons did not themselves witness the negligent acts of Dr. Chiarello, but "were forced to
stand by and watch Robert Brown's decline and ultimate death." Id. The Robinsons alleged
negligent acts consisting of Dr. Chiarello's failure to timely diagnose, treat, test, and refer Robert
Brown to a neurologist, and the hospital's failure to supervise and monitor Dr. Chiarello and to
report on Robert Brown's condition. Id. Applying the Dillon standard to these facts, the trial
court granted both the doctor's and the hospital's motions for summary judgment. The court of
appeals affirmed, stating:



[T]o extend the rule of Dillon to the entire area of bystander injury to a parent, in
situations involving improper diagnosis of a child's ailment, is an extreme
broadening of the rule which the California Supreme Court apparently sought to
limit, and the extension of this cause of action to the whole field of medical
malpractice in diagnosis appears to us an unwarranted and impractical expansion.



Id. at 310. In affirming the summary judgment, the court stated that the appellants had failed to
plead sufficient facts to place themselves within the guidelines for bystander recovery. Id.

 Texas courts have incorporated California's approach to bystander recovery into
the jurisprudence of the state; therefore it is instructive to examine how California courts address
the issue of bystander recovery in medical malpractice cases. In Jansen v. Children's Hospital
Medical Center, 106 Cal. Rptr. 883 (1973), a mother sought damages for emotional trauma and
physical injury caused by witnessing the pain-ridden deterioration and death of her daughter in
the hospital. She later learned that her child's death was due to failure to diagnose a penetrating
duodenal ulcer. The Jansen court denied recovery, concluding that Dillon "contemplates a sudden
and brief event causing the child's injury. . . . [T]he event causing injury to the child must itself
be one which can be the subject of sensory perception." Id. at 884-85. The court held that,
because failure to diagnose is not discernable by a layperson, extending the Dillon rules to cover
that situation would lead to the potentially limitless liability Dillon sought to avoid. Id. This
decision is consistent with the Texas holding in Robinson, and we agree with the reasoning of both
courts.

 We understand Robinson to foreclose a cause of action for mental anguish based
on the distress suffered when a doctor misdiagnoses or fails to treat a patient, and we agree with
that conclusion. Nell Cavanaugh did not and could not have contemporaneously perceived the acts
of negligent diagnosis and treatment she has listed in her seventh amended original petition. 
Appellant has merely alleged a series of imperceptible acts of medical malpractice that resulted
in Sierre Cavanaugh's death. The Robinson court's concern with allowing a cause of action to
be based on failure to diagnose was that it "is not an event which itself can be perceived by a
layman." Robinson, 806 S.W.2d at 310. Although we do not read Robinson to eliminate the
possibility of a bystander cause of action in a medical malpractice context, we conclude that, like
the plaintiffs in Robinson, appellant has failed to plead facts sufficient to place her within the
scope of bystander recovery.

 In addition to her allegations of negligent failure to diagnose, test, and treat Sierre
Cavanaugh's heart condition, Nell Cavanaugh contends that Dr. Jones's failure to provide medical
transportation to Brackenridge Hospital was an independent negligent act that caused her mental
anguish. However, failure to provide medical transportation is not the type of accident or event
that supports bystander recovery under Dillon or the law of this state. See, e.g., Genzer v. City
of Mission, 666 S.W.2d 116 (Tex. App.--Corpus Christi 1983, writ ref'd n.r.e.) (parents and
grandparents witness child injured by an explosion); General Motors Corp. v. Grizzle, 642
S.W.2d 837 (Tex. App.--Waco 1982, writ dism'd w.o.j.) (mother witnesses child trapped between
two trucks). In order to state a cause of action for bystander recovery in Texas, a person's shock
must result from the direct emotional impact of the contemporaneous perception of an accident,
as distinguished from learning of the accident from others after its occurrence. This language
contemplates a sudden and brief event that causes serious injury. In this case, however, appellant
alleges no single event or accident that led to Sierre Cavanaugh's death. 

 We do not doubt that witnessing the death of her granddaughter was both shocking
and painful to Nell Cavanaugh. However, the events that led to Sierre's death are similar to those
alleged by the plaintiffs in Robinson, and likewise do not support a cause of action. The acts of
negligence appellant alleges took place over a seven and one-half month span of time. This is not
the type of sudden or brief event that Dillon and the law of this state currently require to
successfully state a cause of action under the bystander recovery theory. 

 We conclude that appellant has failed to plead facts sufficient to maintain a cause
of action for negligent infliction of emotional distress. Nell Cavanaugh has alleged a series of
negligent acts consisting of failure to diagnose, test, and treat Sierre's heart condition. Dr.
Jones's failure to provide medical transportation, even if negligent, is not the type of "accident"
or "triggering event" that gives rise to a cause of action under the bystander recovery theory. We
agree with the holding in Robinson that there is no cause of action for bystander recovery when
the claim is based upon "a string of events that occurred over an extended period of time" or when
the acts of negligence consist solely of improper diagnosis and treatment. Robinson, 806 S.W.2d
at 310. While we recognize that failure to diagnose, improper diagnosis, and failure to monitor
a patient's condition can cause much distress and may sometimes lead to the pain of witnessing
further injury to, or the death of, a loved one, we conclude that these circumstances generally do
not give rise to a cause of action under bystander recovery.



CONCLUSION 


 Because appellant alleges only negligent diagnosis, testing, and treatment of Sierre
Cavanaugh's heart condition and because appellant has not alleged the type of accident or sudden
traumatic event for which bystander recovery is designed to compensate, we conclude that she has
failed to meet the second requirement of the Dillon test and therefore has not stated a cause of
action based on bystander recovery against appellees Jones, Bell, and PCT. We therefore
overrule the point of error and affirm the judgment of the trial court.



 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed 

Filed: October 13, 1993

Publish

1.   As a general rule, the issue of whether pleadings fail to state a cause of action may not
be resolved by summary judgment. Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex.
1983). However, summary judgment may be rendered on the pleadings when the plaintiff's
petition fails to state a legal claim or cause of action. Hidalgo v. Surety Sav. & Loan Ass'n, 462
S.W.2d 540, 543 n.1 (Tex. 1971). Appellant has amended her petition seven times and we
understand appellees to contend that no matter how she amends her pleadings, appellant cannot
state a cause of action for negligent infliction of emotional distress.
2.   Appellant does not describe the relationship between Drs. Jones and Bell and PCT, nor
does she assert any cause of action against PCT based on the theory of respondeat superior. 

3.   Appellant alleges in her seventh amended original petition that Dr. Jones knew Nell and
Denise Cavanaugh would be using public transportation to take Sierre to the hospital: "Dr.
Jones indicated that Sierra would `make it' if Denise and Nell Cavanaugh took her to the
hospital by way of public transportation." In reviewing a summary judgment for failure to
state a cause of action, we must consider the allegations in the pleadings in the light most
favorable to the non-movant. Therefore, we must accept appellant's allegations as true. See
Abbott v. City of Kaufman, 717 S.W.2d 927, 929 (Tex. App.--Tyler 1986, writ dism'd).
4.   Denise Cavanaugh, Sierre's mother, has already settled her cause of action against
appellees under the Texas Wrongful Death Statute.
5.   The Texas Supreme Court has defined the outer limits of the bystander recovery cause
of action by formally adopting the factors set forth in Dillon. See Freeman, 744 S.W.2d at
923-24.