**Bernadett Nell CAVANAUGH,**

v.

**Dr. Patsy JONES, Dr. Ira Bell, Physicians Clinic of Texas, P.A., Individually and d/b/a Austin Family Medical Center.**

**No. 3–92–344–CV.**

Court of Appeals of Texas, Austin.

Oct. 13, 1993.

Rehearing Overruled Nov. 24, 1993.

---

**2.** The section also provides for the survival of a cause of action for burial expenses.

Bonnie Bratton, Bratton Firm, Austin, for appellant.

L. Kim Basinger, Wilson, Grosenheider & Burns, Austin, for appellees.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

■ Bernadett Nell ("Nell") Cavanaugh appeals the grant of a partial summary judgment in favor of appellees Dr. Patsy Jones, Dr. Ira Bell, and Physicians Clinic of Texas, P.A., Individually and d/b/a Austin Family Medical Center ("PCT"). The partial summary judgment became a final summary judgment because plaintiff Bernadett Denise ("Denise") Cavanaugh's claims against Dr. Jones, Dr. Bell, and PCT were severed before rendition of summary judgment against appellant. In her sole point of error, Nell Cavanaugh asserts that the trial court erred in granting summary judgment that she take nothing because her pleadings failed to state a cause of action for negligent infliction of emotional distress.[1] We will affirm the trial court's summary judgment.

## BACKGROUND

Nell Cavanaugh sought to recover damages for the mental anguish she suffered as the result of witnessing the death of her granddaughter, Sierre Deshay ("Sierre") Cavanaugh, following the allegedly negligent acts of Dr. Jones, Dr. Bell, and PCT. From May 14 to December 20, 1988, Sierre Cavanaugh was a patient of Dr. Jones, Dr. Bell, and PCT.[2] In her petition, Nell Cavanaugh alleges the following series of negligent acts occurring from May to December 1988.

Sierre Cavanaugh was born with a heart murmur that was detected on May 15, 1988, by the treating physician who discharged her from the hospital after her birth. The treating physician provided Dr. Jones with a discharge summary indicating the presence of a heart murmur. The treating physician also telephoned Dr. Jones to inform her of the baby's heart murmur. Dr. Jones and PCT failed to note this information on Sierre Cavanaugh's chart. Sierre was seen by Dr. Bell on May 16th and by Dr. Jones on June 21st; both doctors failed to detect the heart murmur. On September 14, 1988, Dr. Jones noted the baby's rapid respiration and a heart murmur and recommended blood work and a chest x-ray. Relying on her own ability to interpret a pediatric chest x-ray, Dr. Jones failed to make significant findings regarding Sierre's congenital heart problems. Dr. Jones, Dr. Bell, and PCT also failed to take notice of, or place in Sierre Cavanaugh's file, a radiologist's interpretation of this x-ray which indicated that Sierre had an enlarged

---

**1.** As a general rule, the issue of whether pleadings fail to state a cause of action may not be resolved by summary judgment. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). However, summary judgment may be rendered on the pleadings when the plaintiff's petition fails to state a legal claim or cause of action. *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 n. 1 (Tex.1971). Appellant has amended her petition seven times and we understand appellees to contend that no matter how she amends her pleadings, appellant cannot state a cause of action for negligent infliction of emotional distress.

**2.** Appellant does not describe the relationship between Drs. Jones and Bell and PCT, nor does she assert any cause of action against PCT based on the theory of respondeat superior.

heart; the radiologist had recommended that further studies be conducted to determine the baby's cardiac status. On September 28, 1988, Dr. Jones saw Sierre Cavanaugh and again did not address her heart condition.

Sierre was treated in the emergency room at St. David's Hospital on November 29, 1988. The treating physician telephoned Dr. Bell and discussed the baby's poor health and the need for further medical treatment. Dr. Bell failed to ensure that this information was placed in Sierre's file and failed to follow through on recommended care. Dr. Bell saw Sierre on December 5, 1988, and again failed to detect a heart murmur or address her cardiac status. The next day, the treating physician from St. David's Hospital reviewed a chest x-ray and indicated to Dr. Bell that Sierre had an enlarged heart. Dr. Bell did not follow up on this report and failed to ensure that this information was placed in Sierre's file.

Finally, on December 20, 1988, Dr. Jones examined Sierre in the clinic and placed her on oxygen. When Sierre was stabilized, Dr. Jones advised Nell Cavanaugh, Sierre's grandmother, and Denise Cavanaugh, Sierre's mother, that the baby needed to be admitted to Brackenridge Hospital. Because they were afraid Sierre would not survive the trip to the hospital on the city bus, the only means of transportation available to them, Nell and Denise Cavanaugh requested medical transportation from Dr. Jones. According to the facts alleged, Dr. Jones assured them that Sierre would "make it" to the hospital if taken by public transportation.[3]

During the bus ride to the hospital, Nell and Denise Cavanaugh realized that the baby had closed her eyes and was no longer responsive. They asked the bus driver to make a detour directly to Brackenridge Hospital, but their request was denied. They got out of the bus two blocks from the hospital and began to run, stopping in front of the Erwin Center where passersby tried to assist

them. A fireman and nursing school student attempted cardiopulmonary resuscitation, but could not revive Sierre. By the time Emergency Medical Services arrived with an ambulance, the baby had died.

## DISCUSSION

We are reviewing the trial court's decision to grant a motion for summary judgment that is directed solely to the pleadings. Therefore, we must take as true every allegation of the pleading against which the motion is directed. *Labbe v. Carr*, 369 S.W.2d 952, 954 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.). If the pleading, when liberally construed, is sufficient to show a fact issue, the motion must be overruled. *Abbott v. City of Kaufman*, 717 S.W.2d 927, 929 (Tex.App.—Tyler 1986, writ dism'd). Moreover, all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the opposing party is entitled to the benefit of every reasonable inference that can properly be drawn in her favor. *Id.* Taking all of appellant's allegations as true, we must consider whether any of the allegedly negligent acts support a cause of action.

The law of negligent infliction of emotional distress is analyzed by reference to two theories of recovery: the bystander theory and the direct victim theory. The source of the duty the defendant owes to the plaintiff distinguishes bystander cases from direct victim cases. Bystander cases arise in the context of physical injury or emotional distress caused by the negligent conduct of a defendant with whom the plaintiff had no preexisting relationship, and to whom the defendant had not previously assumed a duty of care beyond that owed to the public in general. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 54, at 365–67 (5th ed. 1984). As such, bystander recovery can be premised only upon a defendant's

---

3. Appellant alleges in her seventh amended original petition that Dr. Jones knew Nell and Denise Cavanaugh would be using public transportation to take Sierre to the hospital: "Dr. Jones indicated that Sierra would 'make it' if Denise and Nell Cavanaugh took her to the hospital by way of public transportation." In reviewing a summary judgment for failure to state a cause of action, we must consider the allegations in the pleadings in the light most favorable to the non-movant. Therefore, we must accept appellant's allegations as true. *See Abbott v. City of Kaufman*, 717 S.W.2d 927, 929 (Tex.App.—Tyler 1986, writ dism'd).

violation of a duty not to negligently cause emotional distress to people who observe conduct that causes harm to another. The bystander cases, beginning in California with *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), address the question of duty in situations in which a plaintiff seeks to recover damages as a witness to the negligent injury of another person. In Texas as well, the courts resolve the duty issue in bystander recovery cases by application of the guidelines set forth in *Dillon*. *See Boyles v. Kerr*, 855 S.W.2d 593, 598 (Tex. 1993).

■ The Texas Supreme Court has determined that there is no general duty to refrain from negligently inflicting emotional distress. *Id.* at 597 (overruling *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649 (Tex.1987) to the extent it recognizes an independent right to recover for negligently inflicted emotional distress). The supreme court stated that "mental anguish damages should be compensated only in connection with defendant's breach of some other duty imposed by law." *Boyles*, 855 S.W.2d at 596. The court noted that its holding "does not affect the right of bystanders to recover emotional distress damages suffered as a result of witnessing a serious or fatal accident." *Id.* at 597. The court reaffirmed that the rules set forth in *Dillon* govern bystander recovery in Texas, and concluded that "[b]efore a bystander may recover, he or she must establish that the defendant has negligently inflicted serious or fatal injuries on the primary victim." *Id.* at 598.

■ Recognizing that the Texas Supreme Court has abrogated an independent cause of action based upon negligent infliction of emotional distress, appellant argues that her relationship with her granddaughter's doctors constituted a "special relationship" giving rise to a preexisting duty sufficient to support her claim for damages. Appellant cites no authority for her position that the duty the doctors owed their patient, Sierre Cavanaugh, flowed also to the patient's grandmother. In fact, the authorities appellant does cite in her brief discuss the relationship between the doctor and the patient, not between the doctor and the patient's parent or grandparent. *See, e.g., Childs v. Weis*, 440 S.W.2d 104 (Tex.Civ.App.—Dallas 1969, no writ) (addressing the issue of whether a doctor-patient relationship was established); *Ross v. Friddell*, 423 S.W.2d 658 (Tex.Civ. App.—Tyler 1967, writ ref'd n.r.e.) (holding that a surgeon who undertakes treatment of a patient impliedly contracts with and represents to the patient that he possesses a reasonable degree of skill).

Even if appellant could claim the same rights as a parent based on her status as one of Sierre's primary caretakers, there would still be no preexisting duty that would circumvent analysis of her cause of action under the *Dillon* guidelines. In Texas, there are only two situations in which someone other than the direct victim of a tort may recover damages for mental anguish—a suit brought under the Texas Wrongful Death Statute, Tex.Civ.Prac. & Rem.Code Ann. §§ 71.001–.011 (West 1986) (recovery limited to decedent's spouse, parents, and children), and a bystander suit brought by a plaintiff who has witnessed a close relative's death or injury caused by the defendant's wrongful acts. *See Reagan v. Vaughn*, 804 S.W.2d 463, 467 (Tex.1990); *Freeman v. City of Pasadena*, 744 S.W.2d 923 (Tex.1988).[4] Although appellant claims to stand in a *parental* relationship to Sierre Cavanaugh because she was one of Sierre's two primary caretakers, as Sierre's grandmother she cannot recover under the Wrongful Death Statute. Thus, her only remaining avenue of recovery is a bystander cause of action.

■ In Texas, the bystander cause of action is limited to those persons meeting the requirements of *Dillon*, the California case first delineating guidelines for identifying and limiting the class of persons who might recover damages for mental anguish suffered as a result of witnessing a tort committed against another person. *Boyles*, 855 S.W.2d

---

4. Denise Cavanaugh, Sierre's mother, has already settled her cause of action against appel-

lees under the Texas Wrongful Death Statute.

at 598.[5] The *Dillon* requirements for bystander recovery are:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

(2) Whether the shock resulted from a direct emotional impact upon plaintiff *from the sensory and contemporaneous observance of the accident,* as contrasted with learning of the accident from others after its occurrence.

(3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Dillon,* 441 P.2d at 920 (emphasis added). There is no dispute that Nell Cavanaugh witnessed Sierre Cavanaugh's death, and in that respect has met the first *Dillon* requirement. Nell Cavanaugh stated in her seventh amended original petition that she is the grandmother of the deceased and therefore meets the third *Dillon* requirement. Moreover, appellees conceded during oral argument that appellant's pleadings allege facts that meet both the first and third requirements of the *Dillon* test. Therefore, the only issue in this case is whether appellant has alleged the contemporaneous perception of a brief and shocking event that caused injury or death to Sierre Cavanaugh.

Few Texas cases have addressed the issue of bystander recovery in a medical malpractice context. *See University of Tex. Medical Branch at Galveston v. York,* 808 S.W.2d 106 (Tex.App.—Houston [1st Dist.] 1991, writ granted) (*declining to address the issue of* bystander liability because the record contained no evidence that the father had suffered mental anguish); *Robinson v. Chiarello,* 806 S.W.2d 304 (Tex.App.—Fort Worth 1991, writ denied) (refusing to extend bystander recovery to the entire field of medical malpractice in diagnosis). The leading case in Texas dealing with bystander recovery and medical malpractice, and the case upon which appellees chiefly rely, is *Robinson.* Kenneth and Jackie Robinson sought to recover for mental anguish after witness-

ing the death of their nephew, Robert Brown, caused by the allegedly negligent acts of the hospital and Dr. Chiarello. *Robinson,* 806 S.W.2d at 308. The Robinsons did not themselves witness the negligent acts of Dr. Chiarello, but "were forced to stand by and watch Robert Brown's decline and ultimate death." *Id.* The Robinsons alleged negligent acts consisting of Dr. Chiarello's failure to timely diagnose, treat, test, and refer Robert Brown to a neurologist, and the hospital's failure to supervise and monitor Dr. Chiarello and to report on Robert Brown's condition. *Id.* Applying the *Dillon* standard to these facts, the trial court granted both the doctor's and the hospital's motions for summary judgment. The court of appeals affirmed, stating:

[T]o extend the rule of *Dillon* to the entire area of bystander injury to a parent, in situations involving improper diagnosis of a child's ailment, is an extreme broadening of the rule which the California Supreme Court apparently sought to limit, and the extension of this cause of action to the whole field of medical malpractice in diagnosis appears to us an unwarranted and impractical expansion.

*Id.* at 310. In affirming the summary judgment, the court stated that the appellants had failed to plead sufficient facts to place themselves within the guidelines for bystander recovery. *Id.*

Texas courts have incorporated California's approach to bystander recovery into the jurisprudence of the state; therefore it is instructive to examine how California courts address the issue of bystander recovery in medical malpractice cases. In *Jansen v. Children's Hospital Medical Center,* 31 Cal. App.3d 22, 106 Cal.Rptr. 883 (1973), a mother sought damages for emotional trauma and physical injury caused by witnessing the pain-ridden deterioration and death of her daughter in the hospital. She later learned that *her child's death was due to failure to* diagnose a penetrating duodenal ulcer. The *Jansen* court denied recovery, concluding that *Dillon* "contemplates a sudden and brief event causing the child's injury.... [T]he

---

**5.** The Texas Supreme Court has defined the outer limits of the bystander recovery cause of action by formally adopting the factors set forth in *Dillon. See Freeman,* 744 S.W.2d at 923–24.

event causing injury to the child must itself be one which can be the subject of sensory perception." *Id.* at 884–85. The court held that, because failure to diagnose is not discernable by a layperson, extending the *Dillon* rules to cover that situation would lead to the potentially limitless liability *Dillon* sought to avoid. *Id.* This decision is consistent with the Texas holding in *Robinson,* and we agree with the reasoning of both courts.

We understand *Robinson* to foreclose a cause of action for mental anguish based on the distress suffered when a doctor misdiagnoses or fails to treat a patient, and we agree with that conclusion. Nell Cavanaugh did not and could not have contemporaneously perceived the acts of negligent diagnosis and treatment she has listed in her seventh amended original petition. Appellant has merely alleged a series of imperceptible acts of medical malpractice that resulted in Sierre Cavanaugh's death. The *Robinson* court's concern with allowing a cause of action to be based on failure to diagnose was that it "is not an event which itself can be perceived by a layman." *Robinson,* 806 S.W.2d at 310. Although we do not read *Robinson* to eliminate the possibility of a bystander cause of action in a medical malpractice context, we conclude that, like the plaintiffs in *Robinson,* appellant has failed to plead facts sufficient to place her within the scope of bystander recovery.

In addition to her allegations of negligent failure to diagnose, test, and treat Sierre Cavanaugh's heart condition, Nell Cavanaugh contends that Dr. Jones's failure to provide medical transportation to Brackenridge Hospital was an independent negligent act that caused her mental anguish. However, failure to provide medical transportation is not the type of accident or event that supports bystander recovery under *Dillon* or the law of this state. *See, e.g., Genzer v. City of Mission,* 666 S.W.2d 116 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) (parents and grandparents witness child injured by an explosion); *General Motors Corp. v. Grizzle,* 642 S.W.2d 837 (Tex.App.—Waco 1982, writ dism'd w.o.j.) (mother witnesses child trapped between two trucks). In order to state a cause of action for bystander recovery

in Texas, a person's shock must result from the direct emotional impact of the contemporaneous perception of an accident, as distinguished from learning of the accident from others after its occurrence. This language contemplates a sudden and brief event that causes serious injury. In this case, however, appellant alleges no single event or accident that led to Sierre Cavanaugh's death.

We do not doubt that witnessing the death of her granddaughter was both shocking and painful to Nell Cavanaugh. However, the events that led to Sierre's death are similar to those alleged by the plaintiffs in *Robinson,* and likewise do not support a cause of action. The acts of negligence appellant alleges took place over a seven and one-half month span of time. This is not the type of sudden or brief event that *Dillon* and the law of this state currently require to successfully state a cause of action under the bystander recovery theory.

We conclude that appellant has failed to plead facts sufficient to maintain a cause of action for negligent infliction of emotional distress. Nell Cavanaugh has alleged a series of negligent acts consisting of failure to diagnose, test, and treat Sierre's heart condition. Dr. Jones's failure to provide medical transportation, even if negligent, is not the type of "accident" or "triggering event" that gives rise to a cause of action under the bystander recovery theory. We agree with the holding in *Robinson* that there is no cause of action for bystander recovery when the claim is based upon "a string of events that occurred over an extended period of time" or when the acts of negligence consist solely of improper diagnosis and treatment. *Robinson,* 806 S.W.2d at 310. While we recognize that failure to diagnose, improper diagnosis, and failure to monitor a patient's condition can cause much distress and may sometimes lead to the pain of witnessing further injury to, or the death of, a loved one, we conclude that these circumstances generally do not give rise to a cause of action under bystander recovery.

### CONCLUSION

Because appellant alleges only negligent diagnosis, testing, and treatment of Sierre

Cavanaugh's heart condition and because appellant has not alleged the type of accident or sudden traumatic event for which bystander recovery is designed to compensate, we conclude that she has failed to meet the second requirement of the *Dillon* test and therefore has not stated a cause of action based on bystander recovery against appellees Jones, Bell, and PCT. We therefore overrule the point of error and affirm the judgment of the trial court.